**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| G.W. and Mk. W., | |
| *Plaintiffs,* | Civil Action No. 19-13734 |
| v. | **OPINION** |
| Ringwood Board of Education, | |
| *Defendant.* | |

**John Michael Vazquez, U.S.D.J.**

Plaintiffs G.W. and Mk. W. (collectively, "Plaintiffs") bring this suit against Defendant Ringwood Board of Education seeking the reversal of an Administrative Law Judge's order approving the parties' settlement agreement (the "Settlement Agreement"), as well as a declaratory judgment that the Settlement Agreement is void. In the alternative, Plaintiffs seek a declaratory judgment that the Settlement Agreement's waiver of attorneys' fees is void. Currently pending before the Court is Defendant's motion to dismiss for failure to state a claim. D.E. 5. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to dismiss is denied without prejudice. As further discussed, the Court has concerns as to whether it has subject matter jurisdiction over this matter and orders additional briefing on this point.

---

[1] Defendant's brief in support of its motion to dismiss will be referred to as "Def.'s Br." (D.E. 5); Plaintiffs' opposition will be referred to as "Pls.' Opp." (D.E. 11); and Defendant's reply will be referred to as "Def.'s Reply" (D.E. 12).

# I. BACKGROUND[2]

Plaintiffs are appealing an administrative decision under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C § 1400 *et seq.* Compl. ¶ 1. Plaintiffs had originally filed a due process petition, seeking relief on behalf of their child, M.W., against Defendant in the New Jersey Office of Administrative Law ("NJOAL"). *Id.* ¶ 2. A three-day hearing on Plaintiffs' petition was scheduled to begin on May 7, 2019. *Id.* ¶ 3. G.W. was present for the first day of the hearing, but Mk. W. was not. *Id.* ¶¶ 27-28. Plaintiffs assert that prior to the hearing, they had no notice of any potential settlement conference. *Id.* ¶ 30.

Before the hearing began, the Administrative Law Judge ("ALJ") tasked with overseeing the hearing conferenced the matter with both parties' counsel. *Id.* ¶ 31. Following this conference, G.W. agreed to meet with the ALJ and Defendant to discuss the possibility of settlement. *Id.* ¶ 32. Plaintiffs contend that the ALJ "became an active advocate for settlement, driving the discussion of what it would take to settle the case, opining on the legality and practicability of [Plaintiffs'] requests, and pressuring [Plaintiffs] to settle their matter to avoid a trial." *Id.* ¶ 35. Meanwhile, Defendant indicated that reimbursement of attorneys' fees were "off the table." *Id.* ¶ 36. Plaintiffs allege that this statement was "readily endorsed" by the ALJ, who they claim stated that it was unlikely Plaintiffs would recover their costs if she were to preside over their trial. *Id.* ¶ 37. As such, G.W. agreed to continue to discuss settlement without reimbursement of attorneys' fees. *Id.* ¶ 38.

---

[2] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in Plaintiffs' Complaint ("Compl."). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Sometime thereafter, G.W. "respectfully requested that the parties simply go to trial." *Id.* ¶ 42. The ALJ "again stepped in to advocate for a settlement, suggesting that G.W. not get angry and return to the bargaining table." *Id.* ¶ 43. Mk. W. was not present for these discussions. *Id.* ¶ 45. The ALJ indicated that if Mk. W. was a "decisionmaker," then Mk. W. must appear at the hearing the next day. *Id.* ¶ 46. Plaintiffs contend that this should have ended the proceedings for the day; however, the ALJ asked G.W. to call Mk. W. to get Mk. W.'s input on the settlement talks. *Id.* ¶¶ 47-48. G.W. then called Mk. W., and Mk. W. advised G.W. that her position to settlement was a "firm no." *Id.* ¶ 49. As such, G.W. again attempted to end settlement discussions, to which the ALJ attempted to get discussions "back on track" despite Mk. W.'s position. *Id.* ¶ 50. The settlement discussions thereafter continued for several more hours. *Id.* ¶ 51.

The ALJ requested that G.W. again call Mk. W., with whom the ALJ then spoke directly. *Id.* ¶ 52. Mk. W. discussed her objections to the proposed settlement "to the extent that it had been explained to her and/or to the extent that she understood it." *Id.* ¶ 53. Mk. W. "was left with the distinct impression from [the ALJ] that the settlement of this matter was a 'done deal.'" *Id.* ¶ 55. Plaintiffs nonetheless allege that the ALJ "worked with [Defendant] to overcome or address Mk. W.'s concerns"; however, G.W. was not present for these discussions. *Id.* ¶ 56. The ALJ thereafter asked G.W. to call Mk. W. again, to which Defendant questioned whether the parties were actually going to settle. *Id.* ¶ 58. "Without input from either [Plaintiffs] or their counsel," the ALJ replied that the parties were going to settle. *Id.* ¶ 59. Thereafter, Plaintiffs contend that the parties "hurriedly created a draft settlement agreement." *Id.* ¶ 60. Plaintiffs' counsel attempted to send the proposed written agreement to Mk. W. for review, but Plaintiffs contend that Mk. W. never received the agreement due to "poor service on her cell phone." *Id.* ¶ 61. G.W. also attempted to

call Mk. W. to confirm her receipt of the settlement document, but was unable to reach her. *Id.* ¶ 62.

During this process, a dispute arose as to the scope of the release in the Settlement Agreement. *Id.* ¶ 63. Plaintiffs allege that G.W. agreed to waive only those claims regarding the instant matter, while Defendant instead sought a "global" release of all claims involving G.W., Mk. W, and their child, M.W. *Id.* ¶¶ 63-64. Plaintiffs allege that "the ALJ advised G.W. that a global release was standard, that [Plaintiffs] must waive all of their claims in order to reach a settlement, and demanded that G.W. and his counsel 'let it go.'" *Id.* ¶ 65. Thereafter, the ALJ asked G.W. if Mk. W. had consented to the Settlement Agreement, and G.W. replied that she had not seen it. *Id.* ¶ 66. G.W. then asked if he could take a photo of the agreement and send it to Mk. W. via text message, to which Defendant's counsel objected. *Id.* ¶ 67. Plaintiffs allege that sometime thereafter, the ALJ requested that the parties read a description of the Settlement Agreement into the record. *Id.* ¶ 68.

Prior to taking testimony from G.W., the ALJ had the following colloquy on the record:

> [ALJ]: [G.W.], before I get into my regular questions, I do want to note for the record that [Mk. W.] was not able to join us today but we did communicate with her several times. I think I spoke to her twice by phone and you spoke to her more times by phone and perhaps by text message as well. I also want to note that the settlement agreement was emailed to her at some point during our conversations and that you did confer with her, and so I do want to ask you if I am correct in my understanding that you are authorized today to sign this settlement agreement on both your behalves?
>
> [G.W.]: I am.
>
> [ALJ]: Okay. And you understand that your signature then binds both you and [Mk. W.] to the terms of the settlement, correct?
>
> [G.W.]: I do.

*Id.* ¶ 69. Plaintiffs contend, however, that G.W.'s affirmative responses were based on G.W.'s mistaken belief that Mk. W. had expressed her agreement to the settlement. *Id.* ¶ 70. Moreover, Plaintiffs claim that Mk. W. had previously informed the ALJ that Mk. W. did not, in fact, agree to the settlement. *Id.* ¶ 72. Plaintiffs add that while the terms of the settlement were being read into the record, G.W. received numerous texts from Mk. W. regarding the settlement, and that "[i]t was clear from these texts that Mk. W. did not agree to the settlement, nor would she have agreed had she been apprised of its content and meaning, because she did not have a clear understanding of its terms." *Id.* ¶¶ 75-76. Plaintiffs provide no indication as to whether G.W. informed his counsel, the ALJ, or Defendant of these text messages. Plaintiffs claim, however, that G.W. "felt powerless to stop the settlement process." *Id.* ¶ 77.

Immediately following the hearing on May 7, 2019, the ALJ entered her decision approving the Settlement Agreement, *see* D.E. 8, Ex. B, which Plaintiffs argue "prematurely discontinue[ed] the matter."[3] *Id.* ¶ 79. Plaintiffs allege that "as soon as G.W. had an opportunity to reflect on the

---

[3] Plaintiffs appear to take the position that the ALJ "prematurely" entered her decision approving the Settlement Agreement because of the following provision:

> This Settlement Agreement may be signed in counterparts and shall be deemed fully executed and effective when all parties have executed at least one of the counterparts, even though no single counterpart bears all signatures. A signature shall be considered valid, binding and enforceable if transmitted by facsimile. *This Agreement is subject to the approval of the Ringwood Regional Board of Education. Upon approval by the Board, the parties will file such documents as may be necessary to discontinue the [instant] due process proceeding.*

D.E. 8, Ex. A, ¶ 16 (emphasis added). Plaintiffs seemingly contend that the Settlement Agreement did not become finalized until it was officially approved by the Ringwood Board of Education. *See* Compl. ¶ 86; Pls.' Opp. at 19. In response, Defendant acknowledges that the Settlement Agreement was subject to Board approval, but argues that this does not mean that Plaintiffs were not bound until the Board approved. Defendant further argues that an authorized representative of the Board signed the Settlement Agreement the same day G.W. signed.

[Settlement Agreement]," and "as soon as Mk. W. had an opportunity to actually consider the [Settlement Agreement], they realized that the [Settlement Agreement] conveyed virtually no benefit on them or their [child.]" *Id.* ¶ 80. Accordingly, three days after the settlement conference, on May 10, 2019, Plaintiffs filed a motion with the ALJ to set aside the settlement.[4] *Id.* ¶ 82. That same day, Plaintiffs also sent letters to the Superintendent of Ringwood Public Schools, as well as the President and board members of the Board of Education of Ringwood Public Schools, in which G.W. indicated that he revoked his consent to the Settlement Agreement and Mk. W. indicated that she never agreed to the Settlement Agreement. *Id.* ¶¶ 83-84; *see also* D.E. 1, Exs. B, C, D, E. Defendant held its board meeting on May 13, 2019, which G.W. attended. Compl. ¶ 85. At the board meeting, G.W. again repudiated the Settlement Agreement; however, Defendant approved the Settlement Agreement that same day. *Id.* ¶ 86.

Plaintiffs then filed a three-count Complaint in this Court on June 14, 2019. D.E. 1. Count One is brought under the IDEA, 20 U.S.C. § 1400 *et seq.*, and seeks to "reverse the Decision Approving [] Settlement" because the Settlement Agreement was not executed knowingly and voluntarily. Compl. ¶¶ 87-91; Pls.' Opp. at 7. Count Two seeks a declaratory judgment under the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-52, that the Settlement Agreement is void. Compl. ¶¶ 92-115; Pls.' Opp. at 7. Count Three seeks, in the alternative, a declaratory judgment under the New Jersey Declaratory Judgment Act that the Settlement Agreement's waiver of attorneys' fees is void under the New Jersey Civil Rights Act and New Jersey public policy. Compl. ¶¶ 116-134; Pls.' Opp. at 7. Defendant filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). D.E. 5. Plaintiffs filed opposition, D.E. 11, to which Defendant replied, D.E. 12.

---

[4] Plaintiffs do not indicate whether the ALJ ruled on the motion to set aside the settlement.

## II.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.  LAW AND ANALYSIS

As noted, Plaintiffs assert three Counts against Defendant: (1) reversal of the ALJ's Decision Approving Settlement; (2) a declaratory judgment that the Settlement Agreement is void; and (3) in the alternative, a declaratory judgment that the Settlement Agreement's waiver of attorneys' fees is void under the New Jersey Civil Rights Act and New Jersey public policy. Defendant moves to dismiss all Counts.

Without addressing the merits of the motion, the Court questions whether it has subject matter jurisdiction over Plaintiffs' claims. Neither party has raised an issue as to subject matter jurisdiction. Nevertheless, regardless of whether the issue is raised by the parties, the Court has the authority and obligation to address concerns of subject matter jurisdiction *sua sponte. Nesbit v. Gear Unlimited, Inc.*, 347 F. 3d 72, 76-77 (3d Cir 2003). Importantly, "[o]ne of the most basic principles of our jurisprudence is that subject-matter jurisdiction cannot be conferred upon a court by consent of the parties." *Gosa v. Mayden*, 413 U.S. 665, 707 (1973); *see also Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 346-47 (3d Cir. 2003) (explaining that "it is well-settled that a party can never waive lack of subject matter jurisdiction"). Plaintiffs bear the burden of establishing subject matter jurisdiction. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

Plaintiffs indicate that "[t]his matter is an *appeal* of an administrative action brought pursuant to the [IDEA]." Compl. ¶ 1 (emphasis added). Plaintiffs also indicate that "[t]his Court has subject matter jurisdiction over this case pursuant to 28 U.S.C § 1331 [because] the case arises under the IDEA," thus conferring federal question jurisdiction. *Id.* ¶ 16. Any state law claims raised by Plaintiffs, such as one for a declaratory judgment concerning the New Jersey Civil Rights

Act, are subject to the Court's supplemental jurisdiction under 28 U.S.C. § 1367; the Court does not have independent authority to hear such claims.

The Court has concerns as to whether Plaintiffs' claims are properly characterized as an appeal under the IDEA. In the ordinary course, the Court does have authority, pursuant to federal question jurisdiction, to hear substantive IDEA appeals. But in this matter, the ALJ never entered a decision on the merits as to Plaintiffs' IDEA claims. Instead, the parties reached a settlement, which Plaintiffs now seek to vacate. However, once a settlement is reached, an action to enforce or vacate such an agreement is grounded in contract. *See, e.g.*, *Nolan ex rel. Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) ("A settlement agreement between parties to a lawsuit is a contract." (citation omitted)). Thus even if an underlying matter would confer subject matter jurisdiction, once the matter is settled, a court does not maintain subject matter jurisdiction unless there is an independent basis for doing so. *See L.M. v. Lower Merion Sch. Dist.*, No. 10-4855, 2011 WL 71442, at *3 (E.D. Pa. Jan. 7, 2011) ("Generally, 'enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994)); *Miksis v. Evanston Township High Sch. Dist. # 202*, 235 F. Supp. 3d 960, 978 (N.D. Ill. 2017), *as amended* (Feb. 2, 2017) ("A settlement agreement is a type of contract, and it is well established that a claim for breach of contract generally does not give rise to federal question jurisdiction even if part of the consideration for the agreement is dismissal of an earlier federal suit alleging claims arising under federal law.").

In other words, a federal court does not have subject matter jurisdiction over a contract action unless it meets the statutory requirements for subject matter jurisdiction, often the diversity jurisdiction requirements of 28 U.S.C. § 1332. The parties here do not appear to be completely diverse, regardless of the amount in controversy. While never indicated by Plaintiffs, it appears

that Plaintiffs bring their appeal pursuant to 20 U.S.C. § 1415(i)(2).[5] Section 1415(i)(2) provides as follows:

> (i) Administrative procedures
>
> . . .
>
>> (2) Right to bring civil action
>>
>>> (A)  Any party aggrieved *by the findings and decision made [during a due process hearing]* . . . shall have the right to bring a civil action *with respect to the complaint presented pursuant to this section*, which action may be brought in any State court of competent jurisdiction or *in a district court of the United States*, without regard to the amount in controversy.
>>>
>>> . . .
>>>
>>> (C)  In any action brought under this paragraph, the court –
>>>
>>>> (i)  shall receive the records of the administrative proceedings;
>>>> (ii)  shall hear additional evidence at the request of a party; and
>>>> (iii)  basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

§ 1415(i)(2) (emphases added). The Third Circuit has summarized the process as follows:

> States must comply with detailed procedures for identifying, evaluating, and making placements for students with disabilities, as well as procedures for developing IEPs. They must also implement specified procedural safeguards to ensure children with disabilities and their parents are provided with due process. These safeguards, known collectively as the IDEA's administrative process, provide parents with an avenue to file a complaint and to participate in an impartial due process hearing with respect to "any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a free appropriate public education to such child. . . . Following completion of the IDEA's administrative process, i.e., exhaustion, the IDEA affords "[a]ny party aggrieved by the findings and decisions" made during or pursuant to the

---

[5] The Court infers this from the Decision Approving Settlement. *See* D.E. 1, Ex. A (indicating that the ALJ's decision is "final" under 20 U.S.C. § 1415(i)(1)(A) and "appealable" to a district court under 20 U.S.C. § 1415(i)(2)).

> impartial due process hearing an opportunity for judicial review.
> [citing 20 U.S.C. § 1415(i)(2)(A)]. *In the normal case, exhausting*
> *the IDEA's administrative process is required in order for the*
> *statute to "grant[] subject matter jurisdiction to the district court."*
> After examining the administrative record and hearing additional
> evidence at the request of either party, the reviewing court is
> authorized to grant "such relief as [it] determines is appropriate"
> based on the preponderance of the evidence.

*Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (emphasis added)

(internal citations omitted). Here, Plaintiffs are not claiming to be aggrieved by findings or a

decision made by the ALJ following a due process hearing. Plaintiffs are instead seeking to appeal

the ALJ's Decision Approving Settlement. Compl. ¶¶ 1, 8-9. The ALJ's Decision Approving

Settlement contains the following two findings:

> 1. The parties have voluntarily agreed to the settlement as
>    evidenced by their signature or their representatives' signatures
>    on the attached [Settlement Agreement].
> 2. The settlement fully disposes of all issues in controversy
>    between them and is consistent with the law.

D.E. 8, Ex. B. Again, this is not an appeal of a substantive ALJ decision concerning the IDEA.

Instead, it is an effort to vacate, or undo, the Settlement Agreement.

Here, the Settlement Agreement was reached before the due process hearing was held. The

ALJ thereafter read the terms of the Settlement Agreement into the record, and indicated that, by

doing so, it became "a final decision that indicates [the ALJ] ha[s] approved the settlement and []

directs the parties to abide by its terms," and "has the same impact and import as a decision that

[the ALJ] would've rendered at the conclusion of a hearing." D.E. 8, Ex. C at 5-6. Yet, just as the

parties cannot by consent confer subject matter jurisdiction on a federal court, neither can an

administrative tribunal. The Court has concerns as to whether the ALJ's reading of the Settlement

Agreement into the record transformed the settlement into a "final" and "appealable" decision

issued by a hearing officer pursuant to a due process hearing under §§ 1415(i)(1)(A) and

11

1415(i)(2). If not, then Plaintiffs do not appear to have subject matter jurisdiction. *See Batchelor*, 759 F.3d at 279 ("[A]lthough the parties entered into [a] binding Settlement Agreement, as a threshold matter that is not a final decision issued by a hearing officer that they can argue the [school district] failed to implement." (citing § 1415(i)(1)(A) ("A decision made in a [due process hearing] . . . shall be final") and § 1415(i)(2) ("Any party aggrieved by the *findings and decision* made under this subsection . . . shall have the right to bring a civil action *with respect to the complaint presented pursuant to this section*[.]") (second emphasis added)).

The Court's survey of the caselaw revealed *D.R. ex. Rel. M.R. v. East Brunswick Bd. of Ed.*, 838 F. Supp. 184 (D.N.J. 1993), in which the district court considered an appeal of an ALJ's determination in an IDEA case that a prior settlement was an enforceable contract. In *D.R.*, the plaintiffs entered into a settlement agreement with the defendant school board.[6] Thereafter, defendant refused to pay for certain costs associated with plaintiffs' child's education, claiming that such costs were not covered by the settlement agreement. The plaintiffs requested a hearing before an ALJ seeking an order that their child "was in need of residential placement and a one-to-one aide, that the [child's] current placement along with the provisions of [his] aide were appropriate, and that the [defendant] was required to pay for the cost of [the] aide." *Id.* at 187. At the beginning of the hearing, defendant moved to dismiss on the grounds that the parties'

---

[6] The parties in *D.R.* entered into a settlement agreement during what the court described as a "mediation conference." 838 F. Supp. at 187. Moreover, the *D.R.* court indicated that its statutory basis for appellate jurisdiction rested upon 20 U.S.C. § 1415(e). The Court notes, however, that *D.R.*'s jurisdiction under § 1415(e) is *not* referring to the "mediation" provision under the *current* IDEA framework. *See* § 1415(e) (describing procedures to be taken in connection with a "mediation" session under the IDEA). Rather, *D.R.*'s reference to § 1415(e) is today's equivalent to appellate review under § 1415(i). *See D.R.*, 838 F. Supp. at 187 (explaining that the ALJ's decision was "final" pursuant to "§ 1415(e)(1)" and "appealable" under "§ 1415(e)(2)," mirroring the current framework under § 1415(i)(1) and (2)). The reason for the difference is because *D.R.* was decided in 1993, while the IDEA was amended in 1997 to incorporate, among other things, a "mediation provision" codified under the current § 1415(e).

settlement agreement was binding, and per its terms, defendant was not responsible for the cost of an aide. The ALJ then conducted a bifurcated hearing, with the first stage addressing whether the settlement agreement was binding between the parties. Both the child's father and the Supervisor of Special Education for the defendant school board testified as to their understanding of the agreement. Thereafter, the ALJ issued a formal opinion finding that the parties' settlement agreement was valid and enforceable. While neither party raised the issue of subject matter jurisdiction, the *D.R.* court briefly noted that "[i]n order for the [c]ourt to have subject matter jurisdiction in an IDEA matter, a final decision must be rendered in an administrative process. The ALJ['s] decision . . . upholding the [settlement] [a]greement[] clearly states that it is final pursuant to [§ 1415(i)(1)] and appealable" to the district court.

*D.R.* is not binding precedent. The Court also has concerns because it appears that the district court determined that it had subject matter jurisdiction without any analysis, save the fact that the ALJ in that case indicated that it was a final and appealable decision. As noted, however, an administrative law judge cannot confer subject matter jurisdiction on this Court. And federal courts routinely "decline[] to exercise jurisdiction over [] breach of contract claim[s] where there is no statutory basis" for doing so. *S.T. v. Jersey City Bd. of Educ.*, No. 16-2663, 2016 WL 4941993, at *3 (D.N.J. Sept. 14, 2016).

In an analogous context, the court in *S.T. v. Jersey City Bd. of Educ.*, found that it lacked subject matter jurisdiction to *enforce* the parties' settlement agreement because there existed neither diversity nor federal question jurisdiction. 2016 WL 4941993, at *3. In that case, the plaintiffs filed a petition for a due process hearing against defendant school board alleging that their child was denied a "free appropriate public education" under the IDEA. *Id.* at *1. The parties thereafter entered into a settlement agreement, which was approved by the board of education. *Id.*

13

An ALJ also approved the settlement and issued a "Final Decision Approving Settlement" ordering the parties to comply with its terms. *Id.* The plaintiffs subsequently filed a complaint in federal court claiming that defendant failed to abide by the terms of the settlement. *Id.* The plaintiffs based their federal question jurisdiction on, *inter alia*, the IDEA. However, the district court determined that it lacked subject matter jurisdiction because plaintiffs' claim did not arise under the IDEA, but rather was "nothing more than the enforcement of a settlement agreement." *Id.* at *2.

In the context of *enforcing* a settlement agreement, the court noted that "[t]he IDEA permits courts to enforce settlement agreements resolving an IDEA claim [only] in certain circumstances." *Id.* A court "may exercise jurisdiction over a settlement agreement reached . . . in connection with a '[m]ediation' procedure [citing 20 U.S.C. § 1415(e)] or . . . '[r]esolution session' [citing 20 U.S.C. § 1415(f)]." *Id.* Because the parties did not execute their settlement agreement by means of either the "mediation" or "resolution" processes, the court found that it lacked subject matter jurisdiction over a claim that otherwise sounded in contract. *See also L.M.*, 2011 WL 71442, at *3 (where plaintiff's claim was "essentially a contract dispute" concerning enforcement of a settlement agreement under the IDEA, explaining that "[m]any courts . . . have held that a settlement agreement related to an IDEA claim which is reached outside the formal mediation or resolution process is not enforceable under the IDEA in a district court") (collecting cases)).

Such reasoning applies with equal force to Plaintiffs' effort to *vacate* the Settlement Agreement. Plaintiffs' claims appear to be nothing more than an attempt to undo a contract, and there does not appear to be any independent basis for federal question jurisdiction. While Plaintiffs assert that "this case arises under the IDEA and involves a settlement agreement that includes a waiver of civil rights guaranteed by the IDEA," *see* Pls.' Opp. at 10, Plaintiffs' claims instead

appear to sound in contract, which would not confer federal question jurisdiction on this Court. Rather, Plaintiffs may have to a file a contract action in state court. However, because neither party has raised the issue, the Court does not make a final ruling on its subject matter jurisdiction at this time.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, D.E. 5, is **DENIED without prejudice**. Instead, as set forth in the accompanying Order, the parties are to submit additional briefing on the Court's subject matter jurisdiction. If after the parties' briefing, the Court finds that it does have subject matter jurisdiction, it will address the merits of Defendant's motion. Alternatively, if Plaintiffs intend to refile their action in state court rather than submit briefing, they should notify the Court in writing within the time provided in the accompanying Order. An appropriate Order accompanies this Opinion.

Dated: March 20th, 2020

John Michael Vazquez, U.S.D.J.

15