**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| G.W. and Mk.W. o/b/o M.W., <br><br> *Plaintiffs*, <br><br> v. <br><br> RINGWOOD BOARD OF EDUCATION, <br><br> *Defendant*. | Civil Action No. 19-13734 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

Plaintiffs G.W. and Mk.W. (collectively, "Plaintiffs" or "Parents") bring this suit against Defendant Ringwood Board of Education (the "Board") seeking reversal of an Administrative Law Judge's order approving the parties' settlement agreement (the "Settlement Agreement") and remand back to the Office of Administrative Law for a due process hearing. Plaintiffs also seek a declaratory judgment that the Settlement Agreement is void in its entirety, or in the alternative, that the Settlement Agreement's waiver of attorneys' fees is void. Currently pending before the Court is Defendant's motion for summary judgment, D.E. 35, and Plaintiffs' motion for judgment on the pleadings, D.E. 44. The Court reviewed the parties' submissions[1] and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendant's motion for summary judgment is **DENIED**, and Plaintiffs' motion for judgment on the pleadings is **DENIED**.

---

[1] The submissions for Defendant's motion for summary judgment are Defendant's motion, D.E. 35; Plaintiffs' opposition, D.E. 46; and Defendant's reply, D.E. 47. The submissions for Plaintiffs' motion for judgment on the pleadings are Plaintiffs' motion, D.E. 44; Defendant's opposition, D.E. 45; and Plaintiffs' reply, D.E. 48.

## I.   BACKGROUND[2]

M.W. is a child with a disability who is a resident of Ringwood, New Jersey.  D.E. 1

("Compl.") ¶ 11.  M.W. is eligible for special education and related services pursuant to the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.  *Id.*  G.W. and

Mk.W. are M.W.'s parents.  *Id.* at ¶ 12.  Federal law requires that "local education authorities"

("LEA") that receive federal funds, such as the Board here, provide eligible children with

disabilities a "free appropriate public education" ("FAPE") in the least restrictive environment.

*Id.* ¶ 19; 20 U.S.C. § 1412(a)(1)(A).  Where a dispute arises between an LEA and parents of a child

with disabilities regarding the child's education and services, the parents have a right to a "due

process hearing."  Compl. ¶ 23; 20 U.S.C. § 1415(f).

The Parents filed a due process petition with the Office of Administrative Law ("OAL")

seeking a hearing, and it was scheduled to begin on May 7, 2019.  Compl. ¶¶ 2, 27.  G.W. attended

on that day, with counsel, but Mk.W. did not because she was not scheduled to testify and "did not

want to miss additional days of work."  *Id.* ¶¶ 27-28.  Administrative Law Judge Ellen S. Bass

("ALJ Bass") was to preside over the hearing.  *Id.* ¶ 31.  Before the hearing began, ALJ Bass

"conferenced the case with counsel" and began facilitating settlement discussions.  *Id.* ¶ 31.

Defendant alleges that "[i]t was Plaintiffs, not the Board or Judge Bass, who requested that the

parties engage in settlement discussions prior to the start of the hearing."  D.E. 41 ("Answer") ¶

29.  Plaintiffs allege that G.W. agreed to ALJ Bass participating in settlement discussions because

G.W. believed "he had no real alternative."  Compl. ¶¶ 33-34.  According to Plaintiffs, "Judge

Bass became an active advocate for settlement, driving the discussion of what it would take to

---

[2] The Factual Background is taken from Plaintiffs' Complaint, D.E. 1; Defendant's Answer, D.E.
41; the Settlement Agreement, D.E. 8 Ex. A; the Decision Approving Settlement, D.E. 8 Ex. B;
and the administrative record, D.E. 8 Ex. C.

settle the case, opining on the legality and practicability of Petitioners' requests, and pressuring Petitioners to settle their matter to avoid a trial." *Id.* ¶ 35.  Defendant denies these assertions. Answer ¶ 35.

Plaintiffs further allege that "G.W. had not come to the hearing . . . prepared to discuss specific terms of settlement."  Compl. ¶ 40.  At one point, "G.W. respectfully requested that the parties simply go to trial," but ALJ Bass "again stepped in to advocate for a settlement, suggesting that G.W. not get angry and return to the bargaining table."  *Id.* ¶¶ 42-43.  Defendant denies this allegation.  Answer ¶¶ 42-43.

Plaintiffs also allege that ALJ Bass "remembered Mk.W.'s role, and stated that if Mk.W. was a 'decision-maker,' then she must appear the next day."  Compl. ¶ 46.  ALJ Bass then "asked G.W. to call Mk.W. and get her input."  *Id.* ¶ 48.  At that point, Plaintiffs allege that Mk.W. "advised [G.W.] that her position was a firm 'no' to settlement."  *Id.* ¶ 49.  As a result, "G.W. again attempted to end the settlement discussions," but ALJ Bass continued.  *Id.* ¶ 50.  The Board denies these facts, except for the allegation that "Judge Bass spoke with Mk.W. directly on at least two occasions during settlement discussions by phone."  Answer ¶¶ 46-50.

"When Judge Bass spoke directly with Mk.W. on the phone," Plaintiffs allege that "Mk.W. discussed her objections to the proposed settlement, to the extent that it had been explained to her and/or to the extent that she understood it."  Compl. ¶ 53.  Plaintiffs further claim that Mk.W.'s communications with G.W. and ALJ Bass "were conducted while Mk.W. was at work, struggling with poor cell phone reception, and without her ever having had the opportunity to review the proposed settlement document itself."  *Id.* ¶ 54.

Later that same day, a draft settlement agreement was created.  *Id.* ¶ 60.  While Plaintiffs' former attorney "attempted to send the proposed written agreement to Mk.W. for review,"

Plaintiffs allege that "Mk.W. never received the agreement because of poor service on her cell phone." *Id.* ¶ 61.  G.W. also attempted to call Mk.W. but did not reach her.  *Id.* ¶ 62.  "Judge Bass asked G.W. if Mk.W. agreed to the settlement agreement, and G.W. replied that she had not seen it and asked if he could take a picture and send it via text." *Id.* ¶ 66.  According to Plaintiffs, "[t]he District's counsel replied, 'no.'"  *Id.* ¶ 67.  Defendant alleges, to the contrary, that "Plaintiffs' counsel emailed Mk.W. the Agreement" and that "Mk.W. subsequently confirmed she had reviewed, understood, and accepted it."  Answer ¶ 61.

The parties agree that the following statements then occurred, on the record

> THE COURT: . . . [G.W.], before I get into my regular questions I do want to note for the record that [Mk.W.] was not able to join us today but we did communicate with her several times.  I think I spoke to her twice by phone and you spoke to her more times by phone and perhaps by text message as well.
> I also want to note that the settlement agreement was emailed to her at some point during our conversations and that you did confer with her, and so I do want to ask you if I am correct in my understanding that you are authorized today to sign this settlement agreement on both your behalfs.
>
> [G.W.]: I am.
>
> THE COURT: Okay.  And you understand that your signature then binds both you and your wife to the terms of the settlement, correct?
>
> [G.W.]: I do.

Compl. ¶ 69; D.E. 8 Ex C ("Admin. Rec.") at 12:14-13:6.  According to Plaintiffs, G.W.'s responses were "based on G.W.'s mistaken belief that Mk.W. had expressed her agreement to the settlement to Judge Bass."  Compl. ¶ 70.  But Plaintiffs allege that "Mk.W. had expressed to Judge Bass that Mk.W. did *not* agree to the terms of settlement" and that "[b]ased upon her phone calls with Mk.W., Judge Bass knew or should have known that Mk.W. would not have agreed to the terms of the settlement."  *Id.* ¶¶ 72-73 (emphasis in original).  Moreover, Plaintiffs claim that

"Mk.W. had not even seen the Putative Settlement Agreement because she was not able to access it on her cell phone." *Id.* ¶ 74.

Defendant denies that Mk.W. never saw the Agreement, denies that Mk.W. told ALJ Bass that she did not assent to the Agreement, and denies that ALJ Bass knew or should have known that Mk.W. did not assent to the Agreement.  Answer ¶¶ 70-74.  Defendant points to another section of the administrative record where Plaintiffs' former counsel, Mr. Holland, questioned G.W.:

> MR. HOLLAND: [G.W.], so you read through the entire agreement; is that correct?
>
> [G.W.]: I did.
>
> MR. HOLLAND: Okay.  Are you confident that your wife advised you that she also did the same, that she read through the entire agreement?
>
> [G.W.]: I am.
>
> MR. HOLLAND: Do you feel confident that you understand all of the terms and conditions of that agreement?
>
> [G.W.]: I do.
>
> MR. HOLLAND: Are you confident that she told you – are you – can you represent that she told you that she read and understands those terms as well?
>
> [G.W.]: She did.

*Id.* ¶ 70; Admin. Rec. at 14:15-15:4.

On May 7, 2019, the Settlement Agreement was signed by a representative of the school district and G.W.  D.E. 8 Ex. A at 4.  The Settlement Agreement states that it "shall be deemed fully executed and effective when all parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures."  *Id*.  Moreover, the Settlement Agreement

states that it "is subject to the approval of the Ringwood Regional Board of Education." *Id.*  ALJ Bass entered a "Decision Approving Settlement" on May 7, 2019, even though the Board of Education had not yet approved the Settlement Agreement.  Compl. ¶ 79; D.E. 8 Ex. B.  On May 10, 2019 "the Parents filed a motion with Judge Bass to set aside the settlement and served a copy on Ringwood."[3]  Compl. ¶ 82.  That same day, the Parents sent letters to the Ringwood Superintendent, the Board President, and each Board Member repudiating the agreement.  *Id.* ¶¶ 83-84.  Defendant alleges that these letters were sent "three days after [the Settlement Agreement] had been fully executed and became effective and binding[.]"  Answer ¶¶ 83-84.

A meeting of the Ringwood Board of Education took place on May 13, 2019.  Compl. ¶ 85.  Plaintiffs allege that "[d]uring the public comment, [G.W.] expressly repudiated the Putative Settlement Agreement."  *Id.* ¶ 85.  Defendant alleges that G.W. only "asked the Board to release Plaintiffs from the Agreement."  Answer ¶ 85.  Nevertheless, the Board approved the Settlement Agreement on May 13, 2019.  Compl. ¶ 86; D.E. 8 Ex. A at 4.

Plaintiffs then brought this action appealing ALJ Bass' Decision Approving Settlement. Plaintiffs allege that the Settlement Agreement was not entered by the Parents knowingly and voluntarily and thus the Decision Approving Settlement should be reversed.  Compl. ¶¶ 87-91. Count Two seeks a declaratory judgment under the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-52, that the Settlement Agreement is void.  *Id.* ¶¶ 92-115.  Count Three seeks, in the alternative, a declaratory judgment under the New Jersey Declaratory Judgment Act that the Settlement Agreement's waiver of attorneys' fees is void under the New Jersey Civil Rights Act and New Jersey public policy.  *Id.* ¶¶ 116-134.

---

[3] It is unclear whether ALJ Bass ever decided this motion.

Defendant previously moved to dismiss the action.  D.E. 5.  The Court denied the motion but requested briefing on the issue of subject matter jurisdiction.  D.E. 15.  The Court thereafter held that it lacked subject matter jurisdiction and dismissed the Complaint without prejudice.  D.E. 23; D.E. 24.  Plaintiffs appealed and the Third Circuit reversed and remanded, holding that this Court has subject matter jurisdiction.  D.E. 28; D.E. 29; *G.W. v. Ringwood Bd. of Educ.*, 28 F.4th 465 (3d Cir. 2022).  The Third Circuit also observed that

> [o]ur caselaw suggests that the substantive determination of whether a party validly waived their rights pursuant to the IDEA is not governed by ordinary contract principles but rather by a totality-of-the-circumstances analysis.  *See W.B. v. Matula*, 67 F.3d 484, 497-98 (3d Cir. 1995), *abrogated in part by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803 (3d Cir. 2007) (en banc).  We need not resolve that issue now.  We leave it to the District Court on remand to determine the appropriate test for determining the validity of the waiver.

*Id.* at 470 n.4.

Following the Third Circuit's remand, Defendant filed the present motion for summary judgment.  D.E. 35.  The Court then ordered Defendant to answer the Complaint, which Defendant did on May 16, 2022.  D.E. 40; D.E. 41.  Plaintiffs then filed the present motion for judgment on the pleadings.[4]  D.E. 44.

## II.   STANDARD OF REVIEW

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] Plaintiffs only move for judgment on the pleadings as to Count One.  D.E. 44 at 8.  As such, the Court does not consider Counts Two or Three for purposes of their motion.

Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment.  *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter, but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  As such, "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate.  *Anderson*, 477 U.S. at 250-51.

The showing required to establish that there is no genuine issue of material fact depends on whether the moving party bears the burden of proof at trial.  On claims for which the moving party does not bear the burden of proof at trial, the movant must establish "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In contrast, "'[w]hen the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact[.]'" *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)).  This affirmative showing requires the moving party to show that "'on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.'" *In re Bressman*, 327 F.3d at 238 (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1438).

As for the motion for judgment on the pleadings, Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Pleadings are "closed" after the complaint and answer are filed.

*Horizon Healthcare Servs., Inc. v. Allied Nat'l Inc.*, No. 03-4098, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007).

"'Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x 392, 397 (3d Cir. 2006) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)). In deciding a 12(c) motion, the court "must take all allegations in the relevant pleading as true, viewed in the light most favorable to the non-moving party." *N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 302 (D.N.J. 2015) (citing *Gomez v. Toledo*, 446 U.S. 635, 636 n.3 (1980)). However, the Court is not required to accept "unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." *Allah v. Brown*, 351 F. Supp. 2d 278, 280 (D.N.J. 2004) (citation omitted).

The motion should not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law." *Perez v. Griffin*, 304 F. App'x. 72, 74 (3d Cir. 2008) (citation omitted). In deciding a Rule 12(c) motion, courts may consider the allegations in the pleadings as well as "exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents." *Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.*, 721 F. Supp. 2d 307, 314 (D.N.J. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). As a result, in this matter, the Court has not only considered the pleadings but also the Settlement Agreement, D.E. 8 Ex. A, Decision Approving Settlement, D.E. 8 Ex. B, and administrative record, D.E. 8 Ex. C.

In deciding an IDEA case, a district court must give "due weight" to the Administrative Law Judge's findings. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *see also L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006) ("When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ."). With this standard in mind, this Court is still obligated to "make its own findings by a preponderance of the evidence." *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004).

## III.   ANALYSIS

### A. Defendant's Motion for Summary Judgment

Defendant did not submit a statement of material facts in support of its motion for summary judgment. On this basis alone, the Court denies Defendant's motion pursuant to the Court's Local Civil Rules. *See* L. Civ. R. 56.1 ("A motion for summary judgment unaccompanied by a statement of material facts not in dispute *shall be dismissed*." (emphasis added)). But even if the Court did consider the motion's merits, Defendant argues that "it is the record below the District relies upon as undisputed material facts." D.E. 47 at 5. The Complaint here alleges that the Settlement Agreement was the product of duress and coercion, and that Mk.W. never read or approved the Settlement Agreement. G.W. and Mk.W. have filed certifications attesting to facts that, assuming they are true, could arguably establish duress and coercion. *See e.g.*, D.E. 46-2 ¶ 58 ("I was coerced into this settlement, and I never had an opportunity to truly think about the settlement because I was under pressure the whole day."); D.E. 46-3 ¶ 14 ("I clearly expressed to Judge Bass that I did not agree with the terms of the settlement."). While there are statements in the sparse administrative record that substantially detract from a claim of duress or coercion, the factual allegations here are derived not from the administrative record, but from the facts and circumstances surrounding it. Indeed, the administrative record transcript only captures a limited

dialogue, all of which took place after the settlement negotiation process (where the coercion allegedly occurred) and before the Parents' purported revocation of the Settlement Agreement. *See* Admin. Rec.  In short, the administrative record does not capture some of the alleged material facts.

As to those key facts, the record currently consists of conflicting certifications as well as the underlying administrative record, which clearly demonstrate a genuine dispute of material fact as to whether the Settlement Agreement was knowingly and voluntarily entered.  For example, as noted, the administrative record shows that G.W. stated that he had not been coerced to sign the Settlement Agreement and that he and Mk.W. fully understood the Settlement Agreement.   Admin Rec. at 13:19-21, 14:22-15-4.  Plaintiffs' certifications, however, claim that G.W. was "coerced into this settlement" and that Mk.W. "did not agree with the terms of settlement[.]"  D.E. 46-2 ¶ 58, D.E. 46-3 ¶¶ 13-16.  In light of these disputed questions of material fact, the Court cannot grant summary judgment in the Board's favor.[5]

Moreover, summary judgment is inappropriate here because the necessary inquiry is fact intensive.  *W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995) ("Given the fact-bound nature of [the *Matula* factors], many of which go to a person's state of mind, summary judgment holding that execution of a release was voluntary and knowing may be inappropriate.").  Where a person purportedly waives civil rights claims, the reviewing court must "inquire into the totality of the

---

[5] The Court also notes that no discovery has taken place in this case. *See Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("[B]y its very nature, the summary judgment process presupposes the existence of an adequate record."); *O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 464-65 (D.N.J. 2016) ("It is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." (citation omitted)); *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) ("If discovery is incomplete, a district court is rarely justified in granting summary judgment[.]").

circumstances surrounding execution of the agreement" to determine whether it was entered

knowingly and voluntarily.  *Id.* (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 524 (3d Cir.

1988)).  The Third Circuit has set forth factors to consider in this analysis, including:

> whether (1) the language of the agreement was clear and specific;
> (2) the consideration given in exchange for the waiver exceeded the
> relief to which the signer was already entitled by law; (3) the signer
> was represented by counsel; (4) the signer received an adequate
> explanation of the document; (5) the signer had time to reflect upon
> it; and (6) the signer understood its nature and scope.

*Id.*  A reviewing court "may also look to whether there is evidence of fraud or undue influence, or

whether enforcement of the agreement would be against the public interest."  *Id.* (citing *Coventry*,

856 F.2d at 522-23).[6]

Defendant argues that there is "no evidence of coercion" and that the record is "replete

with evidence of ALJ Bass' efforts to ensure Plaintiffs voluntarily entered the [Settlement]

Agreement."  D.E. 35 at 13.  But the record is actually rather sparse, and Plaintiffs have submitted

competing evidence.  Such scant evidence is unsurprising when discovery has not begun.  Indeed,

the Federal Rules explicitly permit the Court to "defer considering the motion or deny it" where

the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition."  Fed. R. Civ. P. 56(d).  The IDEA itself also states that in an

action appealing from an administrative decision, the reviewing court "shall hear additional

evidence at the request of a party."  20 U.S.C. § 1415(i)(2)(C)(ii).  The Certification of John Rue

notes that "[t]he parents need discovery regarding whether the Board or its attorneys are in

---

[6] The Third Circuit noted that it "need not resolve" the issue of whether *Matula* governed this
matter, and that it would be left "to the District Court on remand to determine the appropriate test
for determining the validity of the waiver."  *G.W.*, 28 F.4th at 470 n.4.  The parties agree that the
*Matula* factors govern this matter.  D.E. 35 at 10; D.E. 44 at 9.  As such, the Court assumes without
deciding that *Matula* provides the appropriate analysis.

possession of [contemporaneous] messages between, for example, Mr. Fiedeldey and his colleagues, or whether Mr. Fiedeldey or the Board's attorney have any discoverable contemporaneous notes or other communications."  D.E. 46-1 ¶ 14.  Rue continues that "[t]he parents further require deposition testimony from Mr. Fiedeldey, the Board's attorney, the Honorable Ellen Bass, ALJ (retired), and the Parents' former attorney to resolve factual issues and to present testimony at trial."  *Id.* ¶ 15.  Since Plaintiffs have not had the opportunity to obtain appropriate discovery, the motion for summary judgment is premature.

The Board also seeks summary judgment as to Counts Two and Three, which seek declaratory judgments that either the entire Settlement Agreement is void, or in the alternative, that the provision waiving attorneys' fees is void.[7]  Due to the factual issues concerning the validity of the Settlement Agreement, the Court also denies summary judgment on these counts.

### B. Plaintiffs' Motion for Judgment on the Pleadings

Plaintiffs claim that on the pleadings, the only possible conclusion is that the settlement agreement is void and unenforceable.  This motion likewise fails.  To determine whether the Settlement Agreement was knowingly and voluntarily entered, the Court must analyze the six factors referenced above.  *See Matula*, 67 F.3d 497.  In considering these factors at this stage, "[a]ll reasonable inferences must be made in the non-moving party's favor" and there must be no material issue of fact left to resolve.  *N.J. Physicians United*, 141 F. Supp. 3d at 302-03.  Plaintiffs point to two facts in particular: (1) "Plaintiff Mk.W., who was a co-petitioner in the OAL, was not

---

[7] The Board also argues that Plaintiffs were permitted to, and did, waive their entitlement to attorneys' fees under the IDEA, and thus summary judgment should be granted as to Count Three. D.E. 35 at 21-24.  The Court disagrees.  In the first instance, Plaintiffs seek to void the entire Settlement Agreement, which, as explained below, the Court has declined to do at this stage. Because the Court has not determined the validity of the Settlement Agreement as a whole, it will not reach the alternative, narrower argument regarding the purported waiver of attorneys' fees at this point.

13

present on May 7, 2019" and (2) "Plaintiff Mk.W. did not sign the purported settlement agreement, and, in fact, there is not even a signature line for her." D.E. 44 at 2. But Plaintiffs have pointed to no authority establishing that both Parents' signatures are required, and, in the administrative proceeding, G.W. explicitly stated that he had authority to sign the Settlement Agreement on behalf of both Parents. Admin. Rec. at 12:21-13:6. This admission leads to the reasonable inference (at this stage) that G.W. had the authority to bind both himself and Mk.W.

Plaintiffs also state that "the totality of the circumstances as analyzed through the *Matula* factors render the purported settlement agreement void." D.E. 44 at 10. First, the Court notes that this fact-intensive inquiry is difficult to resolve on a motion for judgment on the pleadings. *Smart Vent Prods., Inc. v. Crawl Space Door System, Inc.*, No. 13-5691, 2016 WL 4408818, at *9 (D.N.J. Aug. 16, 2016) (noting that "a motion for judgment on the pleadings . . . is not the proper stage of litigation for" an analysis—there, likelihood of confusion—that requires "district courts to consider an array of fact-intensive factors"); *Minhal Acad. of Turnersville, Inc. v. Twp. of Washington*, No. 20-1120, 2021 WL 3758073, at *6 (D.N.J. Aug. 25, 2021) (denying a motion for judgment on the pleadings and noting that "Plaintiff's fact-intensive . . . claim should be resolved with a complete factual record"); *Lebofsky v. City of Phila.*, No. 06-5106, 2007 WL 1217874, at *4 (E.D. Pa. Apr. 24, 2007) (noting that claims that "are highly fact-specific" are "unsuitable for judgment on the pleadings"); *cf. Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 516 (S.D.N.Y. 2010) (noting in the context of a motion to dismiss that "a fact finder will be in a far better position to determine" a fact-intensive inquiry "following the close of discovery than the Court would be solely on the basis of the pleadings").

The Court, moreover, must view the facts and all reasonable inferences in favor of Defendant. In doing so, the record reflects that Mk.W. participated in settlement discussions

14

"extensively through electronic means"; that G.W. and Mk.W. "carefully reviewed the [Settlement] Agreement and understood its terms"; and that Mk.W. "reviewed and agreed to the [Settlement] Agreement after Plaintiffs' counsel sent it to her."  Answer ¶¶ 6-7, 28, 54.  Indeed, in the administrative proceeding, G.W. explicitly stated that he was "confident" that both he and Mk.W. read and understood the terms of the Settlement Agreement and that nobody had coerced or forced him in any way to sign the Settlement Agreement.  Admin. Rec. at 13:19-21; 14:15-15:4. These facts, and the reasonable inferences therefrom,  preclude a judgment on the pleadings in Plaintiffs' favor.  The motion is denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, D.E. 35, is **DENIED** and Plaintiffs' motion for judgment on the pleadings, D.E. 44, is **DENIED**.  An appropriate Order accompanies this Opinion.

Dated: December 21, 2022

_____
John Michael Vazquez, U.S.D.J.